UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re: Reinhardt, Carrie Ann
        Reinhardt, Timothy Conrad,

        Debtors,
_____/

Carrie Ann Reinhardt,

        Appellant,

v.

Weston Prince, Bay County
Treasurer,

        Appellee,
_____/

Case No. 23-13233

Hon. George Caram Steeh

OPINION AND ORDER
AFFIRMING BANKRUPTCY COURT

In this bankruptcy appeal, the court considers whether the tax

foreclosure of the Debtors' home resulted in a preference under 11 U.S.C.

§ 547. The bankruptcy court determined that the elements of § 547(b) were

not met and granted summary judgment in favor of the taxing authority, the

Bay County Treasurer. As discussed below, the court agrees and affirms

the bankruptcy court's ruling.

- 1 -

BACKGROUND FACTS

The material facts are not in dispute. Carrie Ann Reinhardt owned
real property located on Madison Avenue in Bay City, Michigan. She
obtained title to the property after her grandmother passed away in 2015,
subject to a mortgage held by PNC Bank. Reinhardt did not pay the
property taxes levied in 2019. As a result, on March 1, 2021, the property
was forfeited to the Bay County Treasurer pursuant to M.C.L. § 211.78g(1).
A certificate of forfeiture was recorded on April 12, 2021, with the Bay
County Register of Deeds.

The taxes remained unpaid, and in June 2021, the Treasurer filed a
petition in the Bay County Circuit Court for foreclosure of the tax lien. After
notice and two hearings, the court entered a judgment of foreclosure on
February 18, 2022. Reinhardt did not pay the amount due by the end of the
redemption period, which expired on March 31, 2022. On April 5, 2022, a
notice of judgment of foreclosure was recorded with the Bay County
Register of Deeds.

Subsequently, the Treasurer brought an action in the Bay County
District Court to evict Debtors from the property. On June 10, 2022,
Reinhardt and her husband, Timothy Reinhardt, filed a voluntary petition
under Chapter 13 of the Bankruptcy Code. They included the property in

their proposed Chapter 13 plan. On June 30, 2022, the Debtors filed this adversary proceeding to set aside the tax foreclosure. Pursuant to the automatic stay, the eviction action was terminated pending the outcome of the bankruptcy case.

Although the Treasurer planned to offer the property for sale on August 4, 2022, it withdrew the property from the sale due to the bankruptcy filing. Presently, the Treasurer has title to the property while the Debtors remain in possession. The Debtors timely filed a notice of intent to claim surplus proceeds pursuant to M.C.L. 211.78t. PNC bank also filed claim against the surplus proceeds, but it was rejected as untimely.

As of June 10, 2022, the date of the bankruptcy petition, the Treasurer's claim amounted to $5,844.80. This amount does not include subsequent taxes, interest, or other charges that would be applicable to the proceeds of a tax foreclosure sale. Had the property been offered at the August 4, 2022, tax sale, the minimum bid would have been $11,054.74, which would have included the unpaid delinquent taxes, interest, penalties, the July 2022 taxes, process server fees, filing fees, and the Treasurer's legal fees. The approximate market value of the property is between $73,500 and $79,900.

The Debtors' proposed Chapter 13 plan relies upon the tax foreclosure being set aside as a preferential transfer pursuant to 11 U.S.C. § 547(b). In that case, the property would be sold by the Trustee and the Treasurer's claim and those of other creditors would be fully paid. The Debtors note that the property is their only potential unexempt asset. If the foreclosure is not set aside, the Debtors contend that there will be no assets available to pay other creditors.

Upon cross-motions for summary judgment, the bankruptcy court found in favor of the Treasurer and dismissed the adversary proceeding. The bankruptcy court made two rulings: First, it determined that the transfer occurred within ninety days of the bankruptcy petition and was subject to avoidance if the other requirements of § 547(b) were met. Second, the court determined that the "more than" requirement was not met and, therefore, the transfer was not preferential. The parties filed cross appeals; the Treasurer challenges the bankruptcy court's finding that the transfer occurred during the ninety-day window, and the Debtors contend that the bankruptcy court erred in finding that the "more than" element was not satisfied.

LAW AND ANALYSIS

I.     Standard of Review

Reinhardt timely filed an appeal of the bankruptcy court's order dismissing her adversary complaint. District courts have "jurisdiction to hear appeals . . . from final judgments, orders, and decrees . . . of bankruptcy judges." 28 U.S.C. § 158(a).  This court reviews the bankruptcy court's interpretation of the Bankruptcy Code *de novo*.  *In re Dow Corning Corp*., 456 F.3d 668, 675 (6th Cir. 2006). When "statutory language is unambiguous, our inquiry both begins and ends with the text itself." *United States v. Bedford*, 914 F.3d 422, 427 (6th Cir.), *cert. denied*, 139 S. Ct. 1366 (2019).

II.    Preferences under § 547(b)

This adversary proceeding arises under 11 U.S.C. § 547(b), which allows the bankruptcy trustee to recover certain prepetition transfers of the debtor's property for the benefit of the bankruptcy estate. The purpose of this section is "to ensure that all creditors similarly situated receive equal treatment," thus avoiding transfers "which prefer some creditors over others." *In re C-L Cartage Co., Inc.*, 899 F.2d 1490, 1492 (6th Cir. 1990). The statute provides that the trustee may "avoid any transfer of an interest of the debtor in property" that is:

(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made--
    (A) on or within 90 days before the date of the filing of the petition; or
    (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
(5) that enables such creditor to receive more than such creditor would receive if--
    (A) the case were a case under chapter 7 of this title;
    (B) the transfer had not been made; and
    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C.A. § 547(b). At issue in this case are whether the transfer was made within 90 days before the filing of the petition (§ 547(b)(4)) and whether the Treasurer received "more than" it would have in a hypothetical Chapter 7 liquidation (§ 547(b)(5)).

Section 547(b)(5) requires "the bankruptcy court to construct a 'hypothetical Chapter 7 case;' *i.e.*, to determine what the creditor would have received in a liquidation." *In re Chattanooga Wholesale Antiques, Inc.*, 930 F.2d 458, 464 (6th Cir. 1991). In doing so, "[t]he court must focus on the relative distribution between classes as well as the amount that will be received by the members of the class of which the [creditor] preferee is a member." *In re Tenna Corp.*, 801 F.2d 819, 823 (6th Cir. 1986) (quoting

- 6 -

H.R. Rep. 95-595, 372, 95th Cong. 2d Sess. 372-73, *reprinted in* 1978
U.S.C.C.A.N. 5963, 6328). In other words, "the court must decide the
transferee's creditor class and determine what distribution that class would
have received had the transfer not been made." 5 Collier on Bankruptcy
¶ 547.03 (16th Ed. 2024). Section 547(b)(5) is "directed at transfers which
enable creditors to receive more than they would have received had the
estate been liquidated under Chapter 7 and the disputed transfer not been
made. Payments to a creditor who is fully secured are not preferential since
the creditor would receive payment up to the full value of his collateral in a
Chapter 7 liquidation. Payments to an unsecured or undersecured creditor,
however, are preferential." *C-L Cartage*, 899 F.2d at 1493.

III.    Michigan Tax Foreclosure Process

The Michigan General Property Tax Act permits county treasurers to
recover delinquent property taxes and related penalties, interest, and fees
through the foreclosure and sale of the tax-delinquent property. *See* M.C.L.
§ 211.78 *et seq.* In general, "tax-delinquent properties are forfeited to the
county treasurers; foreclosed on after a judicial foreclosure hearing; and, if
not timely redeemed, sold at a public auction." *Rafaeli, LLC v. Oakland Cty.*,
505 Mich. 429, 442, 952 N.W.2d 434, 443 (2020). Prior to 2021, the GPTA
"did not provide for any disbursement of the surplus proceeds to the former

property owner, nor [did] it provide former owners a right to make a claim for these surplus proceeds." *Id.* at 447. The *Rafaeli* court held that the retention of the former property owner's equity in the property resulted in an unconstitutional taking. *See also Tyler v. Hennepin Cty., Minn.*, 598 U.S. 631, 642 (2023) (after foreclosure, "a taxpayer is entitled to the surplus in excess of the debt owed"). In response, the Michigan legislature amended the GPTA to provide a process for former owners to recover surplus proceeds from tax foreclosure sales.

When property taxes are not paid and become delinquent, collection is turned over to the "foreclosing governmental unit," which is generally the county treasurer. *Id.* On March 1 of the year following delinquency, the property is forfeited to the treasurer for the amount of the tax delinquency, including penalties, interest, and fees. The treasurer then files a petition for foreclosure in the appropriate circuit court, no later than June 15 following the forfeiture. M.C.L. § 211.78h. Notice is provided to the property owner. M.C.L. § 211.78i. If the taxes remain unpaid and the property is not redeemed, the court holds a hearing and enters a foreclosure judgment. "All redemption rights to the property expire on the March 31 immediately succeeding the entry of a judgment foreclosing the property under this section, or in a contested case 21 days after the entry of a judgment

foreclosing the property under this section." M.C.L. § 211.78k(5). Fee simple title to the property foreclosed by the judgment "will vest absolutely in the foreclosing governmental unit . . . without any further rights of redemption," if all delinquent taxes, interest, penalties, and fees are not paid by March 31 following the judgment. *Id.*

Once title vests in the foreclosing governmental unit, the state or a municipality may exercise the right of first refusal to purchase the property "at the greater of the minimum bid or its fair market value." M.C.L. § 211.78m. Otherwise, the property may be sold at public auction. *Id.*

By July 1 after the judgment of foreclosure, the property owner may submit a notice of intention to claim any remaining proceeds from the sale of the foreclosed property. M.C.L. § 211.78t. Subsequently, the former owner files a motion in circuit court to obtain the remaining proceeds. *Id.* Before allocating the remaining proceeds, the court "shall require payment to the foreclosing governmental unit of a sale commission equal to 5% of the amount for which the property was sold by the foreclosing governmental unit." *Id.* Once the court determines the remaining proceeds and priority of claimants, it issues an order requiring the foreclosing governmental unit to pay the claimants as directed. M.C.L. § 211.78t(9),(10).

- 9 -

IV.   Discussion

The Debtors argue that the foreclosure judgment should be avoided as a preferential transfer because the Treasurer received more than it would have in a hypothetical Chapter 7 liquidation. The "more than" test under § 547(b)(5) requires "the bankruptcy court to construct a 'hypothetical Chapter 7 case;' *i.e.*, to determine what the creditor would have received in a liquidation." *Chattanooga Wholesale*, 930 F.2d at 464. This hypothetical Chapter 7 liquidation is constructed as of the date the bankruptcy petition was filed. *Tenna*, 801 F.2d at 823.

The Treasurer obtained title to the Debtors' property on March 31, 2022, the date that their right of redemption expired. On the date of the bankruptcy petition, June 10, 2022, the Treasurer's claim was $5,844.80 and the approximate market value of the property was between $73,500 and $79,900. The Debtors contend that the Treasurer received property worth approximately $76,700, or about $70,000 more than its claim.

Debtors disregard, however, their statutory right to claim any remaining proceeds from the sale of the property under Michigan law. M.C.L. § 211.78t. They exercised this right by filing a timely notice pursuant to M.C.L. § 211.78t. This "statutory right to claim surplus proceeds *constitutes value* which, if exercised, is reasonably equivalent to the

- 10 -

surplus proceeds themselves." *In re West*, 2022 WL 1309939, at *7 (Bankr. E.D. Mich. May 2, 2022) (emphasis added). Under the circumstances, the Treasurer does not have the right to retain the property in exchange for the $5,844.80 tax debt (M.C.L. § 211.78m), nor does it have the right to retain the surplus proceeds (M.C.L. § 211.78t). In its hypothetical liquidation analysis, the court must consider the value of Debtors' right to the surplus proceeds. As of the petition date, the Treasurer was entitled to one hundred percent of its claim, and the Debtors were entitled to the surplus proceeds. The Treasurer would be entitled to one hundred percent of its claim in a Chapter 7 liquidation, and the surplus proceeds would be part of the bankruptcy estate. The foreclosure neither improved the Treasurer's position nor allowed it to receive more than it would have received in a hypothetical liquidation. No other creditor was entitled to be paid before the Treasurer, whose tax lien was fully secured. This analysis illustrates the general rule that "[p]ayments to a creditor who is fully secured are not preferential since the creditor would receive payment up to the full value of his collateral in a Chapter 7 liquidation." *C-L Cartage*, 899 F.2d at 1493.

The cases relied upon by the Debtors do not command a different result. *In re Hackler*, 938 F.3d 473 (3d Cir. 2019) involved a tax foreclosure sale in New Jersey. Under New Jersey law, the public does not bid on the

property, but "only on the rate of interest on the unpaid taxes; the lowest bidder wins." *Id.* at 475. The winner becomes the lienholder, continuing to pay the taxes as they become due. To redeem the property, the owner pays the lienholder the redemption amount (the original unpaid taxes and subsequent taxes plus interest). After two years, if the owner fails to redeem, the lienholder may file for a foreclosure judgment and obtain title to the property. *Id.* In *Hackler*, the lienholder had a claim for about $40,000 and obtained property worth approximately $335,000. The *Hackler* court held that the transfer was preferential and the "more than" test was met because "it bestowed a parcel worth $335,000 on a party that would have received $45,000 in a Chapter 7 proceeding." *Id.* at 477.

New Jersey's tax foreclosure scheme is significantly different than Michigan's. In Michigan, buyers competitively bid on the property itself, rather than the tax lien. This process allows the opportunity for sales to generate surplus proceeds that the former owner has the right to recover. In *Hackler*, there was no opportunity for the former owners to obtain surplus proceeds. The Debtors' ability to recover their surplus proceeds distinguishes this case from *Hackler* and ensures that the Treasurer will not

- 12 -

receive more than it would in a Chapter 7 proceeding.[1] Typically, courts have avoided foreclosures as preferences when the secured lienholder purchased the property by credit bid, obtaining title to real estate worth significantly more than the debt. *See, e.g., In re Andrews*, 262 B.R. 299, 306 (Bankr. M.D. Pa. 2001) (citing cases where foreclosures were avoided as preferences and "the secured creditor foreclosed on real estate by bidding at a foreclosure sale an amount less than the fair market value of the property"); *In re Villarreal*, 413 B.R. 633, 637 (Bankr. S.D. Tex. 2009) ("[W]hen the property was sold at foreclosure, Mr. Showalter as the creditor/bidder received at least $3,250,000 to satisfy the remainder of his $70,000 claim").

---

[1] The court notes that the *Hackler* approach of using preference law to challenge tax foreclosure sales has been criticized as unsound. One commentator has argued that, to the extent a foreclosure sale results in an overpayment to a creditor (for example, when the lienholder obtains title to property for less than its market value), the transfer does not result in a preference, but arguably a fraudulent transfer. Lawrence Ponoroff, *Non-Collusive Foreclosure Sales and the Limits of the Preference Law: Please, Sir, I Want Some More*, 97 Tul. L. Rev. 519, 548 (2023). The Supreme Court has held, however, that a properly conducted, non-collusive mortgage foreclosure sale may not be challenged as a fraudulent transfer. *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 533 (1994). *See also In re West,* 2022 WL 1309939, at *7 (Bankr. E.D. Mich. May 2, 2022) (Michigan tax foreclosure sale did not result in fraudulent transfer).

Debtors argue that the Treasurer will receive "more" than its initial $5,844.80 claim after the property is sold. Had the property been offered at the August 4, 2022, tax sale, the minimum bid would have been $11,054.74, which would have included the unpaid delinquent taxes, interest, penalties, the July 2022 taxes, process server fees, filing fees, and the Treasurer's legal fees. These charges are not applied, however, until the sale takes place, in this case after the petition date. The court considers the amount and priority of the Treasurer's claim *on the petition date* and compares it to what the Treasurer would receive in a hypothetical liquidation. *Tenna*, 801 F.2d at 823.

Moreover, both the Bankruptcy Code and state law permit the charges about which the Debtors complain. Section 506(b) of the Bankruptcy Code provides:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

11 U.S.C. § 506(b). Section 506(b) expressly permits secured creditors to recover charges that are allowed under a state statute, in this case the

- 14 -

GPTA. The GPTA provides that the minimum bid for property sold after tax

foreclosure "must include":

> all of the delinquent taxes, interest, penalties, and fees due
> on the property, and may include any additional expenses
> incurred by the foreclosing governmental unit in connection
> with the forfeiture, foreclosure, maintenance, repair, or
> remediation of the property or the administration of this act
> for the property, including, but not limited to, foreclosure
> avoidance, mailing, publication, personal service, legal,
> personnel, outside contractor, and auction expenses.

M.C.L. § 211.78m(16)(c). In addition, the statute provides for a five percent

sales commission fee to be paid from the sale proceeds. M.C.L.

§ 211.78t(9).

   The Debtors do not provide authority for the proposition that charges

that may be applied after the petition date and that are expressly permitted

by statute render the foreclosure judgment preferential. These are not

charges that allow the Treasurer to recover "more than" its claim, but rather

they would be essentially part of its claim by operation of statute, whether it

or the bankruptcy trustee undertakes to sell the property. *See, e.g.,*

*Villarreal*, 413 B.R. at 639 (secured creditor's claim in hypothetical Chapter

7 liquidation includes "principal, interest, fees and expenses" under § 506).

   The Debtors further argue that the Treasurer, as a nonconsensual

lienholder, would not be entitled to statutory attorney fees under § 506(b) in

a hypothetical liquidation, relying on *In re Brentwood Outpatient, Ltd.*, 43

F.3d 256, 263 (6th Cir. 1994). The Sixth Circuit in *Brentwood* determined

that "nonconsensual oversecured lienholders are entitled to interest,

penalties, fees, and costs which accrue *pre* petition; but the only allowable

*post* petition addition for nonconsensual lienholders is interest." *Id.*

However, the *Brentwood* court relied on the previous version of § 506(b),

which was amended by the Bankruptcy Abuse Prevention and Consumer

Protection Act in 2005. PL 109-8, 119 Stat 23. The previous version allowed

"interest on such claim, and any reasonable fees, costs, or charges

provided for *under the agreement* under which such claim arose." *See*

*Brentwood*, 43 F.3d at 259. (emphasis added). Based upon this language,

the Sixth Circuit concluded that, in the absence of an agreement, only post-

petition interest could be recovered by nonconsensual lienholders, such as

taxing authorities. The statute was amended in 2005 to include "any

reasonable fees, costs, or charges provided for under the agreement *or*

*State statute* under which such claim arose." 11 U.S.C. § 506(b); *see also*

*In re Gift*, 469 B.R. 800, 806 (Bankr. M.D. Tenn. 2012) (the BAPCPA

amendment put "consensual and nonconsensual liens on a level playing

field" and rendered "the primary ruling in *Brentwood Outpatient*" moot). In

- 16 -

light of this amendment, which expressly allows charges provided by state statute, the Debtors' reliance on *Brentwood* is misplaced.

In sum, the Debtors have failed to demonstrate that the "more than" test in § 547(b)(5) is satisfied. The Treasurer is a first-priority, fully secured creditor that is entitled to receive one hundred percent of its claim. The transfer did not improve the Treasurer's position, disadvantage any other similarly situated creditor, or allow the Treasurer to obtain more than it is entitled to under the Bankruptcy Code and state law. Accordingly, the court finds that the bankruptcy court was correct in granting summary judgment in favor of the Treasurer.[2]

<u>ORDER</u>

IT IS HEREBY ORDERED that the bankruptcy court's order granting summary judgment in favor of the Treasurer and dismissing the Debtors' adversary complaint is AFFIRMED.

Dated: January 8, 2025

s/George Caram Steeh
HON. GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

[2] Therefore, the court need not consider the Treasurer's argument that the bankruptcy court erred in finding that the transfer occurred during the ninety-day preference period.

- 17 -

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record
on January 8, 2025, by electronic and/or ordinary mail.

s/LaShawn Saulsberry
Deputy Clerk